IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

James Hose,

    Plaintiff,

vs.                              Case No. 13-2490-JTM

Henry Industries, Inc.,

    Defendant.

MEMORANDUM AND ORDER

Henry Industries operates a delivery service for pharmaceutical products. Its drivers are engaged as putative independent contractors, but plaintiff James Hose alleges that the drivers are effectively Henry's employees, and thus the failure to pay drivers overtime benefits violates the Fair Labor Standards Act. Hose brought suit on behalf of himself and other drivers working for Henry in eleven states. On September 24, 2014, the court granted conditional certification of the action. (Dkt. 56). Subsequently, 116 other plaintiffs have filed opt-in forms to join the action.

While the present action was pending, Hose also filed an action in St. Louis County, Missouri District Court, alleging that the Henry's actions violate the Missouri Minimum Wage Maximum Hour Law. Following an extensive evidentiary hearing, the Missouri court approved an opt-out class action on May 27, 2015, recognizing a class of some 400 Missouri

1

delivery drivers. *Hose v. Henry Industries*, Case No. 14SL-CC00949.

Plaintiff Hose has now moved to dismiss without prejudice from the action the 85 Missouri opt-in plaintiffs, thus leaving the federal FLSA with the claims of the drivers making deliveries outside of Missouri.[1] Hose argues that decertification or dismissal without prejudice is appropriate in light of the state law action. Because it has been certified under state law as an opt-out class, the action is broader that the FLSA action, and presents the opportunity for plaintiffs to recover with a slightly broader statute of limitations period. Alternatively, Hose argues, the court could exercise its discretion to sever the claims pursuant to Fed.R.Civ.Pr. 21.

Henry argues that it would be unfair to require it to defend similar claims in multiple forums, and cites case law opposing the practice of claim splitting. *See Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). It further contends that many of the plaintiffs have failed to completely respond to various discovery requests. According to the

---

[1] In addition to this motion, Hose has also filed two motions to dismiss the claims of eleven plaintiffs who have withdrawn their opt-in forms. (Dkt. 90, 93). He has also moved (Dkt. 91) to amend the list of plaintiffs subject to dismissal, and has moved to dismiss Count II of the Complaint, alleging FLSA retaliation.

The defendant initially indicated that it did not oppose the motion to dismiss Count II. However, afer plaintiff subsequently brought a retaliation claim in the United States District Court for the Eastern District of Missouri, defendant moved to amend its response to and challenge the dismissal. (Dkt. 106). The court granted leave to amend the response so that defendant's position may be fully reflected in the record. (Dkt. 108).

However, the court here by grants the motion to dismiss Count II for good cause shown. The possibility of the refiling of plaintiff's retaliation claim in Missouri was implicit at the time of the motion to dismiss. As indicated elsewhere in this opinion, the court finds that the motion to dismiss the Missouri plaintiffs should be granted, and the court finds that the retaliation claims for the remaining non-Missouri plaintiffs is properly dismissed.

defendant, 44 plaintiff have filed no response, 40 plaintiffs have only responded to some of its requests, and 33 have provided full responses. As a result, Henry argues that the 73 plaintiffs providing less than a full response should be dismissed with prejudice pursuant to Fed.R.Civ.Pr. 41(b).

The court will grant the relief sought by plaintiffs. Henry's claim of prejudice, based upon defending multiple actions at once, are unpersuasive. At the time the court took up the issue of conditional class certification, Henry argued strongly *against* such a single forum to resolve the claims of its drivers, contending that the drivers' claims should proceed as separate actions. Such individual actions would necessarily occur in multiple courts across the country.

Henry's argument that the plaintiffs should be enjoined somehow from maintenance of the Missouri action lacks authority. Certainly, as Henry notes, courts strongly disapprove of claim-splitting, and thus "have discretion to control their dockets by dismissing duplicative cases." *Katz v. Gerardi*, 655 F.3d at 1217. But this power allows the federal court to dismiss a duplicative claim. *See id.* at 1218-19 ("the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation").

Henry supplies no authority for the idea that this federal court somehow has the power to enjoin an ongoing state action. The other cases cited by Henry also reflect the power to dismiss pending federal litigation which is duplicative. *See Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979); *Tate v. Werner*, 68 F.R.D. 513, 520 (E.D.Pa. 1975). The cases do

not support the idea that this court can reach out and affirmatively take control of an action pending before a state court.

Henry quotes *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) to the effect that "there is a 'power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Dkt. 99, at 21). The Court in *Landis* stated in full: "Apart, however, from any concession, *the power to stay proceedings* is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254 (emphasis added). The issue in *Landis* was whether the District Court for the District of Columbia erred in staying an action attacking the constitutional validity of the Public Utility Holding Company Act of 1935 (49 Stat. 803 (15 U.S.C.A. § 79 et seq.)), given the existence of numerous actions advancing similar claims in the same district court and in other federal district courts.[2] As with *Katz*, the case illustrates the power of the court to control its docket by staying duplicative litigation or by dismissing it. It provides no support for defendant's requested injunction.

In addition to its request for decertification or dismissal, Hose also suggests as an alternative, that the court sever the claims of some of the plaintiffs. (Dkt. 89, at 8). Henry

---

[2] Henry also cites *Romine v. CompuServe Corp.*, 160 F.3d 337, 341 (6th Cir. 1998), but this is another case in which the court addressed the power to defer consideration of a successive or duplicative action, in *Romine* pursuant to he abstention doctrine announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The court found that the Colorado River factors "very strongly supports the district court's decision to stay its proceedings in deference to the state action." 160 F.3d at 342-43.

Industries responds by arguing that while Fed.R.Civ.Pr. 21. provides a vehicle for the severance of unrelated claims, and stresses that the claims of the drivers are not unrelated within the meaning of Rule 21. (Dkt. 99, at 16).

The court finds that decertification is appropriate. By its terms, Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." In its discretion, the court finds that decertification of the claims by the Missouri opt-in plaintiffs advances the interests of justice by allowing those plaintiffs to join in the ongoing state action, premised on state law. Discovery can be tailored to the issues surrounding the delivery services in Missouri, and the requirements of the Missouri statute.

In any event, Rule 21 severance is simply an alternative method of achieving the same result, and the resolution of the plaintiffs' motion may be resolved by that method, or decertification. Decertification under § 216(b) of the FLSA serves to automatically dismiss without prejudice the relevant opt-in plaintiffs. *See Bayles v. Am. Med.Resp. of Colorado*, 962 F.Supp. 1346, 1347 (D. Colo. 1997).

Henry also argues that the court cannot effectively dismiss the named plaintiff, James Hose, from the action, thereby leaving the plaintiff class without a named representative. However, its argument (Dkt. 99, at 22) depends in part on the court accepting its other argument that this court can somehow force the dismissal of Hose's Missouri statutory claims. As noted earlier, the court finds no basis for interfering in the Missouri action.

Moreover, the authority cited by Henry simply establishes the necessity of having

5

a named representative in class actions under Rule 23. In contrast, FLSA class actions have been allowed to proceed in the absence of a named representative. *See Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006). This reflects the nature of FLSA "similarly situated" class actions, under which a person filing an opt-in consent form is automatically rendered a plaintiff in the action. *See Owens v. Bethlehem Mines*, 108 F.R.D. 207, 212 (S.D.W.Va. 1985). The present action may proceed to address the claims of drivers outside of Missouri.

In addition to raising various arguments against decertification, Henry Industries has independently moved to dismiss the opt-in plaintiffs *with prejudice* under Rule 41(b), for their alleged failure to provide requested discovery.

The court will not grant the heavy sanction of dismissal with prejudice. As noted earlier, Henry did not file its Rule 41(b) sanctions motion until after the plaintiff's motion for decertification. Indeed, it is hard to view the sanctions motion as anything other than a surreply to the motion for decertification, one which was filed after the completion of the briefing on plaintiff's other motions. Moreover, Henry's eleventh hour motion was not preceded by any motion to compel discovery.

Dismissal with prejudice under Rule 41(b) is granted only in rare circumstances. Such relief is "an extreme sanction appropriate only in cases of willful misconduct." *See Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). In resolving such a motion, the court considers the prejudice to the defendant, the interference with the judicial process, the plaintiff's culpability, prior warnings issued to the plaintiff, and the possibility of lesser sanctions. *Id.* at 920-21.

Applying these factors here, the court finds no basis for imposing "the death penalty of pleading punishments." *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007). First, Henry has failed to show any substantial prejudice. As noted earlier, Henry's Rule 41(b) motion was not preceded by any motion to compel the requested discovery. Its efforts to obtain the missing discovery were limited to periodic requests for additional information, coupled with a consent to defer presenting any discovery issues to the court. Henry has failed to show in any way how it has been injured by a delay in production of the requested discovery.

The court finds no misconduct, willful or otherwise, on the part of the plaintiff. To the extent there are discovery issues, this stems in part from Henry's decision to target all of the 116 opt-in plaintiffs with extensive requests for production. (Dkt. 68). The court's review of discovery process establishes that plaintiff's counsel has not delayed, but has acted professionally and industriously in attempting to obtain the information sought by the defendant. The circumstances of the opt-in plaintiffs — individual persons, many without substantial resources or extensive education, working demanding driving schedules — mandate leniency in the discovery process, especially given the extent of the information sought by Henry.

There has been no meaningful interference in the judicial process. The court's Case Management Order was modified by extending the deadline to file motions to compel discovery — motions which, of course, were never filed.

No warning was issued to the plaintiffs of dismissal with prejudice. Indeed, the

7

opposite: the United States Magistrate Judge overseeing the discovery process expressed her sympathy with plaintiff's counsel's efforts to obtain discovery from all of the opt-in plaintiffs.

In its Reply in support of its motion for sanctions, Henry belatedly attempts to address all the relevant *Ehrenhaus* factors, but presents to the court no reason for granting the relief sought. The defendant correctly cites the Tenth Circuit's observation *in Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) that *Ehrenhaus* provides a "flexible framework" for analyzing motions under Rule 41(b), and cites the statement in plaintiff's response brief that counsel "by no means promised" he would obtain information from all the opt-in plaintiffs as somehow indicating a future unwillingness to abide by directives of the court.

The court finds neither point has merit. In *Ecclesiastes*, the court observed "notice is not a prerequisite for dismissal," but nevertheless remains "an important element in the *Ehrenhaus* analysis." *Id.* at 1149. Thus, the court may dismiss an action under Rule 41(b) absent notice, where there is strong evidence of particularly egregious and deliberate misconduct by the plaintiff. *See Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174–75 (10th Cir.1995) (defendant presented evidence of perjured testimony by the plaintiff) (cited in *Ecclesiastes*, 497 F.3d at 1149)). In *Ecclesiastes*, the court found the warning element of the *Ehrenhaus* analysis could be supplied by constructive notice of dismissal. The court thus upheld the dismissal because, while "the district court here never *promised* to dismiss the case in the event of dilatoriness or evidentiary losses ... it certainly left open,

8

if not highlighted, such a possibility." (*Id*. at 1150 (emphasis in original)). The present case lacks any basis for a finding of constructive notice of impending sanctions.

Henry also attempts to discount the relevance of any prior motion to compel by citing *Jacobs v. Oxford Senior Living*, 2015 WL 2365626 (D. Kan. May 18, 2015), in which this court granted defendant's Rule 41(b) motion without the existence of a prior motion to compel. In *Jacobs*, the pro se plaintiff refused to attend a deposition and accept the rulings of a Magistrate Judge, and indicated that she felt it was unfair to attend depositions in which defendant was represented by counsel. Most importantly, the plaintiff made it clear that she would not abide by the orders of the court in the future.

> While plaintiff had not been previously warned of dismissal as a possible sanction, several of her pleadings indeed were stricken by the Magistrate Judge, with the specific admonition that she would "present additional information through discovery and/or further pleading as the case progresses."Plaintiff has indicated a categorical unwillingness to provide such additional information. Her conduct in walking out of the deposition *even as counsel attempted to telephone the court* indicates a clear intent to avoid the direction of the court. Most importantly, the absence of a prior warning is more than counterbalanced by plaintiff's present Response, which indicates a continuing refusal to respond to defendant's legitimate discovery requests.

Id. at *2 (docket citations omitted, emphasis in *Jacobs*).

*Jacobs* was an exceptional case, and has no relevance here. Defendant's attempt to portray the plaintiff in this case as equally intransigent has no merit. According to Henry, counsel for plaintiff in the response to the sanctions motion states "that he 'by no means promised' to provide discovery requested on behalf of all opt-in plaintiffs." (Dkt. 105, at 9). According to Henry, this comment "suggests that perhaps Plaintiff's counsel is not

9

willing to take much , if any, additional effort to provide the missing responses." (*Id.*)

Even with the careful qualifiers "suggests" and "perhaps," this clearly distorts the relevant passage in the response brief, where the plaintiff gives no indication at all of an unwillingness to abide by explicit directives of the court in the future. The section of the Response addresses the procedural history of the litigation:

> Defendant here cannot point to any court order indicating individualized discovery is necessary or merited, especially in light of the substantial burdens to Plaintiff. Defendant acknowledged these issues at the outset of merits-based discovery, when it initially proposed serving written discovery on only half of the class. Plaintiff's counsel agreed that it would attempt to obtain written discovery from all opt-in Plaintiffs, but by no means promised that such efforts would be practicable or feasible. Moreover, the Magistrate Judge has been sympathetic to Plaintiff's position in former conferences with the Court.

(Dkt. 102, at 13 (citation omitted)).

This passage from the Response sets forth four facts. First, there has been no direct order by the court resolving the issue of complete discovery of all 116 opt-in plaintiffs. Second, the defendant initially indicated that discovery from only some opt-in plaintiffs would be satisfactory. Third, the plaintiff's efforts to secure complete discovery was voluntarily undertaken rather than mandated by the court. Fourth, the Magistrate Judge complemented plaintiff's efforts to comply with the broader discovery request. Strikingly, the defendant's Reply does not challenge the truth of any of these four statements.

In sum, the court finds no basis for imposing *any* sanctions upon the opt-in plaintiffs at this time, let alone the death penalty sanction of dismissal without prejudice. If defendant desires full discovery as to all remaining opt-in plaintiffs, it may do so through

an appropriate motion to compel.

IT IS ACCORDINGLY ORDERED this 22nd day of January, 2016, that the court hereby grants plaintiff's Motions to Amend (Dkt. 91), grants the amended Motion to Decertify (Dkt. 89) by decertifying the class as to those opt-in plaintiffs who fall with the class certified in the Missouri state action, thereby dismissing these plaintiffs without prejudice; grants plaintiff's motions to dismiss (Dkt. 90, 93) certain specified plaintiffs without prejudice, and grants the motion to dismiss Count II of the Complaint (Dkt. 92). The court denies defendant's Motion to Dismiss. (Dkt. 101).

_____ s/ J. Thomas Marten__
J. THOMAS MARTEN, JUDGE
