## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICHARD FRICK, on behalf of | ) |
| himself and other similarly | ) |
| situated individuals, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 13-cv-2490-JTM/GEB |
| | ) |
| HENRY INDUSTRIES, INC., | ) |
| | ) |
|     Defendant. | ) |

### SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

Plaintiff Richard Frick ("Frick"), on behalf of himself and other similarly situated individuals (collectively, "Plaintiffs"), and Defendant Henry Industries, Inc. ("Henry" or "Defendant") (collectively, the "Parties") have reached an FLSA collective action settlement of misclassification and unpaid overtime claims. For the reasons more fully set forth below, Plaintiff respectfully requests this Court enter an order approving the settlement as set forth herein.

### INTRODUCTION

The Parties engaged in heavily contested litigation for almost four (4) years. This case presented certain complex issues of fact and law under the Fair Labor Standards Act ("FLSA") and its regulations. Despite contentious disputes over almost every issue in the litigation, the Parties successfully negotiated a fair and reasonable resolution of their disputes at Court-ordered mediation, as reflected in their final Settlement Agreement. Exhibit D – Settlement Agreement.

The Settlement Agreement will resolve the claims of the Plaintiffs who, after the Court finally certifies the case to proceed as a collective action settlement and after receiving notice of the settlement, do not opt out of the settlement. The Settlement Agreement fairly apportions

recovery for each individual based upon objective criteria and a uniformly applied formula.  The Settlement Agreement guarantees relief for Plaintiffs in light of significant risk and uncertainty, should the matter have proceeded to trial and appeal.  The Settlement Agreement also provides for a reasonable service award for Frick for the time, resources, and effort he expended in pursuing claims on behalf of all Opt-In Plaintiffs, and for a reasonable attorneys' fees award.

The proposed Settlement Notice provides for timely, fair, and accurate notice to the class regarding the settlement and the available opt-out procedures to ensure each Opt-In Plaintiff has ample opportunity to make an informed decision as to whether to opt-out of the settlement. Exhibit A – Settlement Notice.  Nothing in the Settlement Agreement affects the rights of those individuals who choose to not participate in the settlement.  For the reasons set forth in more detail below, Plaintiff respectfully requests this Court approve the Settlement Agreement.

## THE PARTIES' CLAIMS AND DEFENSES

Plaintiffs are drivers with whom Henry contracted to perform delivery services for third parties. [ECF No. 1].  Henry entered into contracts with third parties for the provision of delivery services to be performed by Plaintiffs. [ECF No. 1].  Plaintiff filed his Complaint against Henry on September 18, 2013. [ECF No. 1].  In their Complaint, Plaintiffs alleged, *inter alia*, Henry misclassified them as independent contractors, failed to pay them overtime compensation, and failed to make, keep and preserve accurate records of their hours worked. [ECF No. 1].  Moreover, Plaintiffs alleged Henry willfully violated the FLSA. [ECF No. 1].

In its Answer, Henry denied all alleged violations of the FLSA. [ECF No. 13].  Henry raised a litany of affirmative defenses and brought a counterclaim against then-named-Plaintiff

2

James Hose ("Hose")[1] based on his Cartage Agreement with Henry. [ECF No. 13]. Henry alleged, *inter alia*, Plaintiffs were exempt from the overtime requirements from the FLSA and it had a good faith basis for its classification of Plaintiffs and its pay practices. [ECF No. 13]. In its counterclaim, Henry further alleged Hose breached his Cartage Agreement with Henry by filing the instant lawsuit and challenging his classification as an independent contractor. [ECF No. 13]. Based on this alleged breach, Henry sought indemnification from Hose for the attorneys' fees and expenses it incurred (and would continue to incur) in the litigation. [ECF No. 13].

The Parties engaged in intensive motion practice and extensive discovery in highly contentious litigation for several years prior to Court-ordered mediation. [*See* ECF Nos. 1-115]. On January 23, 2014, Plaintiff amended the Complaint to include a second count against Henry based upon allegations of unlawful retaliation and termination under the FLSA. [ECF No. 29]. On February 17, 2014, Plaintiff Hose moved to dismiss Henry's counterclaim. [ECF Nos. 32-33]. Henry filed its response in opposition to Plaintiff's motion to dismiss on February 28, 2014. [ECF No. 36]. On April 7, 2014, the Court entered its Memorandum and Order granting Plaintiff's motion to dismiss Henry's counterclaim. [ECF No. 39].

On April 11, 2014, Plaintiff moved for conditional certification of the litigation as a collective action under the FLSA. [ECF No. 42]. Plaintiff sought conditional certification on the basis of allegations and evidence that: (1) Henry uniformly classified its drivers as independent contractors; (2) Henry used uniform job titles for drivers with uniform job duties; (3) Henry used a uniform Cartage Agreement with all drivers; (4) Henry subjected drivers to uniform compensation policies; (5) Henry tracked driver activity in real-time in a uniform fashion through

---

[1] Hose was later removed from this action as the named plaintiff and dismissed due to his involvement as the named plaintiff in a class action in Missouri in which he brought substantially similar claims against Henry. [ECF No. 109]. On or around September 15, 2016, Frick replaced Hose as the named plaintiff. [ECF No. 225].

a centralized electronic tracking system; (6) Henry issued uniform guidelines on delivery procedures; (7) Henry implemented uniform expectations on driver appearance; and (8) Henry established uniform requirements for vehicles used to perform deliveries. [ECF No. 43].

Henry filed an extensive response in opposition to Plaintiff's motion for conditional certification. [ECF No. 54].  Henry challenged each of Plaintiff's alleged bases for conditional certification. [ECF No. 54].  Ultimately, Henry contended, *inter alia*, its "diverse network of independent contractors" was not similarly situated or suitable for conditional certification in that: (1) drivers performed different types of deliveries (*e.g.*, line haul, route and stat); (2) delivery work and requirements varied from customer to customer; (3) drivers maintained separate business entities with separate expenses; (4) drivers could subcontract routes to other drivers; (5) drivers could negotiate different pay rates on their routes; (6) Henry's customers—not Henry—directly enforced delivery-specific requirements; (7) drivers "owned" varying routes; and (8) the drivers' independent contractor classification did not suffice to create a common policy or plan for purposes of conditional certification. [ECF No. 54].

On September 24, 2014, the Court granted Plaintiff's motion for conditional certification. [ECF No. 56].  The Court also approved Plaintiff's proposed class and class notice. [ECF No. 56]. Defendant thereafter filed its motion for clarification. [ECF Nos. 58-59].  Plaintiff filed a response in opposition to Defendant's motion due to concern about the sufficiency of Defendant's compliance with the Court's order granting conditional certification, and Defendant filed a reply thereafter. [ECF Nos. 60-61].  On October 31, 2014, the Court issued its Memorandum and Order granting Defendant's motion for clarification. [ECF No. 62].  Class notice was thereafter issued.

On or around November 4, 2014, the Court issued its scheduling order and ordered the Parties to complete mediation by April 20, 2015. [ECF No. 63].  On or around January 21, 2015,

Plaintiff filed eighty four (84) consent forms signed by Henry drivers. [ECF No. 64].  On or around January 22, 2015, Plaintiff filed an additional six (6) consent forms signed by Henry Drivers. [ECF No. 65].  On or around April 21, 2015, Plaintiff filed another twenty two (22) consent forms signed by Henry Drivers. [ECF No. 72].

On or around May 27, 2015, the Circuit Court of St. Louis County certified a class action of Henry drivers in Missouri. [ECF No. 89-2].  As a result, Plaintiff moved to sever and/or dismiss certain Missouri individuals who had opted into this action. [ECF Nos. 89-91, 93].  Plaintiff Hose also dismissed without prejudice his retaliation claim alleged in this case. [ECF No. 92].  To date, twenty six (26) Opt-In Plaintiffs remain in this action.

## THE SETTLEMENT PROCESS

The Court issued several amended case management orders that rescheduled Court-ordered mediation at the Parties' request. [ECF Nos. 67, 73, 88, 104, 116].  On March 9, 2016, the Court ordered the Parties to complete mediation by May 20, 2016. [ECF No. 116].  On May 16, 2016, the Parties attended their first Court-ordered mediation before Larry Rute. [ECF No. 165].  The Parties did not reach an agreement at this time. [ECF No. 165].

After unsuccessful mediation, the Parties continued to aggressively litigate the matter. [*See* ECF Nos. 123-241].  Defendant noticed the depositions of all Opt-In Plaintiffs on the same day the mediation occurred and filed a motion to compel document production the next day. [ECF Nos. 123-154].  The Parties resumed intensive motion practice related to these depositions and other discovery matters. [*See, e.g.*, ECF Nos. 154, 166, 203, 206, 226, 227, 229, 230].

On November 10, 2016, the Parties appeared before the Court for a pre-trial conference and to discuss the status of discovery. [ECF No. 238].  After ruling on the Parties' discovery disputes, the Court set the matter for a status conference on January 11, 2017. [ECF No. 238].

After the status conference on January 11, 2017, the Court extended the discovery deadline to March 13, 2017 and set the matter for another status conference. [ECF No. 239].

On February 16, 2017, the Court referred the Parties for a second mediation and stayed discovery and pre-trial dates pending the outcome of mediation. [ECF No. 243].  On April 12, 2017, the Parties engaged in a lengthy mediation that lasted almost eleven (11) hours. [ECF No. 245].  At this mediation, the Parties reached an agreement in principle on settlement and executed a settlement term sheet. [ECF. No. 245].  Over the course of the next two (2) months, the Parties negotiated and finalized the terms and conditions of their Settlement Agreement.

## DISCUSSION

Settlement of an FLSA collective action generally requires court approval because private agreements will not effectuate a valid release for the employer. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982); *see also Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740 (1981).  A court reviews a proposed FLSA settlement to determine whether it involves a bona fide dispute and whether it is fair and reasonable. *Lynn's*, 679 F.2d at 1353; *Fulton v. TLC Lawn Care, Inc.*, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012).[2]  "If the settlement reflects a reasonable compromise of issues actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.* (citing *Lynn's*, 679 F.2d at 1354); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").

The Court must make some final class certification finding before it can approve a collective action settlement. *Peterson v. Mortgage Sources, Corp.*, 2011 WL 3793963, at *5 (D.

---

[2] "The FLSA also requires that a settlement agreement include an award of reasonable attorney's fees." *Peterson v. Mortgage Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).

Kan. Aug. 25, 2011).  However, an FLSA collective action is not a class action—individuals participating affirmatively choose to be bound and represented by counsel, and no absent class members' claims are being settled. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975).[3]  The due process concerns in the class action context requiring a high level of judicial scrutiny are not present in the FLSA collective action context because absent class members, or those who opt-out of the settlement, are not bound by the outcome. *See, e.g.*, *Davenport v. Charter Comm., LLC*, 2015 WL 164001 at *5-6 (E.D. Mo. Jan. 13, 2015).

**I.     Terms of the Settlement Agreement.**

The Settlement Agreement provides Defendant shall pay a total of $160,000.00 to resolve this case.  This amount is designed to cover unpaid overtime wages and liquidated/statutory damages available under the FLSA, as well as Plaintiff Frick's Service Payment of $2,000.00 and class counsel attorneys' fees and expenses, respectively, of $53,333.33 and $26,228.29.

The Settlement Agreement further sets out the procedure for allocation of the settlement funds.  It provides that settlement allocations among Plaintiffs will be proportional to each Plaintiff's estimated overtime hours worked based on available information from Defendant's route records, electronic delivery tracking system data, billing invoices and other documentary evidence.  The notice of settlement to each Plaintiff will set forth his or her allocated amount and

---

[3] "Settlement-only" classes have become a stock device for resolution of class actions brought pursuant to Rule 23 to promote just, efficient, and cost-effective method for settling claims, in light of concerns about the efficient use of court resources and the conservation of funds to compensate claimants. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617-18 (1997). Given their usefulness, settlement-only classes have become widely accepted in opt-in collective actions under the FLSA. *See, e.g.*, *Greg Smoot v. Wieser Brothers Gen. Contractors, Inc.*, 2016 WL 1736498 (W.D. Wisc. Apr. 29, 2016); *Keller v. TD Bank, N.A.*, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014); *Butler v. American Cable & Telephone, LLC*, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010); *Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282 (D.N.J. July 24, 2006). Their use effectively balances the tension between the un-waivable nature of an employee's rights under the FLSA (absent a DOL- or court-supervised settlement) and the opt-in mechanism of the Portal-to-Portal Act designed "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 173 (1989).

will advise him or her about the opportunity to opt-out of the settlement. On average, the settlement class members will receive $3,016.86 to compensate them for their alleged unpaid overtime at a half-time rate.[4] This is a significant recovery in the face of substantial risk.

**II.     The Settlement Agreement Resulted From Heavily Contested Litigation And Represents A Fair And Reasonable Resolution Of A Bona Fide Dispute.**

The Court should approve the Settlement Agreement because Plaintiffs are similarly situated, the Parties have aggressively litigated a complex bona fide dispute regarding Plaintiffs' proper classification under the FLSA for almost four (4) years, and the Settlement Agreement provides timely relief to Plaintiffs in the face of substantial risks at trial and on appeal. To approve an FLSA settlement, the Court must: (1) make a final certification ruling; (2) determine the existence of a bona fide dispute; (3) find the proposed settlement fair and reasonable; and (4) confirm the proposed settlement contains an attorneys' fee award. *See Barbosa v. Nat. Beef Packing Co., LLC*, 2015 WL 4920292, at \*4 (D. Kan. Aug. 18, 2015).

**A.     Final Certification Is Appropriate Because Substantial Evidence Shows Plaintiffs Were Similarly Situated And It Will Facilitate Settlement.**

Courts in the Tenth Circuit tend to require to a final certification finding prior to approval of an FLSA settlement. *See, e.g.*, *McCaffrey v. Mortgage Sources, Corp.*, 2011 WL 32436, at \*3 (D. Kan. Jan. 5, 2011). Generally, a court looks at several factors when determining final collective action certification: (1) the disparate factual and employment settings of the individual plaintiffs; (2) various defenses available to the defendant(s) which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Koehler v. Freightquote.com, Inc.*, 2016 WL

---

[4] Plaintiffs arguably would not be entitled to overtime compensation at one-and-a-half times the regular rate because Defendant paid Plaintiffs for all hours worked at a regular rate (but without the extra half-time on hours in excess of forty (40) in any given workweek).

1403730, at *4 (D. Kan. April 11, 2016).  The policy encouraging settlement of litigation weighs in favor of final collective action certification. *Id*. at *6.

Here, the Court has ample basis in the record upon which it can enter a final certification finding for purposes of settlement.  The Parties extensively briefed the issue of whether Plaintiffs were "similarly situated" for purposes of this action. [ECF Nos. 43, 54, 55].  Plaintiff set forth a substantial factual and legal basis in the record to show how Plaintiffs were, as a matter of fact and law, similarly situated. [ECF No. 43].  In particular, Plaintiff adduced evidence that, despite varying geographical locations, all contract drivers performed the same type of work (*i.e.*, performing delivery services for third parties) and were subject to the same expectations, requirements, control, and compensation policies and practices. [ECF No. 43].  The Court agreed and conditionally certified Plaintiff's proposed class. [ECF No. 56].  Moreover, Plaintiffs seek final certification only for purposes of settlement.  For these reasons, Plaintiff respectfully requests the Court finally certify the action for purposes of settlement.

**B.    The Settlement Agreement Provides Fair and Reasonable Relief On A Bona Fide Dispute Involving A Complex, Fact-Intensive Question Of Law.**

The record before the Court unequivocally demonstrates that Plaintiffs will receive fair and reasonable relief in the face of a complex bona fide dispute between the Parties.  To demonstrate the existence of a bona fide dispute, parties must provide the Court with: "(1) a description of the nature of the dispute; (2) a description of the employer's business and type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each parties' estimate of the number of hours worked, and the applicable wage." *Koehler*, 2016 WL 1403730, at *6.

The Court assesses the reasonableness and fairness of settlement based on the context of the case and a variety of similar factors: (1) whether the proposed settlement has been fairly and honestly negotiated; (2) whether serious questions of law and fact exists which place the ultimate outcome of the litigation in doubt; (3) whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Barbosa*, 2015 WL 4920292, at *5.

Here, Plaintiff presents the Court with substantial evidence and reasons demonstrating both the existence of a bona fide dispute between the Parties and the reasonableness and fairness of the proposed settlement.

### i.   The Parties Fundamentally Disagreed About The Nature Of Defendant's Business.

The Parties disagree on whether Defendant properly classified Plaintiffs as independent contractors. Under the FLSA, in determining whether individuals are covered by the FLSA, the Court's inquiry "is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347, 1353 (D. Kan. 2016) (quoting *Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440-41 (10th Cir. 1998)). "Instead, the economic realities of the relationship govern, and 'the focal point is "whether the individual is economically dependent on the business to which he renders service…or is, as a matter of economic fact, in business for himself."'" *Id*. The "economic reality test" involves a fact-intensive inquiry into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records. *Id*.

Here, Plaintiffs contend Defendant uniformly exercised significant control over its drivers by policy and practice; in other words, Plaintiffs contend Defendant acted as their employer (as

defined under the FLSA) and failed to pay them overtime wages.   In response, Defendant characterizes itself as a third party logistics company that brokers delivery services on behalf of its clients through a network and series of agreements with independent contractor drivers and other entities.  Plaintiffs' claims would rise or fall based on the answer to this threshold question—whether Defendant properly classified Plaintiffs as independent contractors.

> **ii.    The Parties Had Diametrically Opposed Positions On Liability And Damages.**

Plaintiffs contend the record evidence shows Henry acted as an employer subject to the overtime requirements of the FLSA due to the uniformity of its treatment of Plaintiffs and the significant control it exerted over them.   In applying the "economic reality test," courts generally look at the following factors: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Matrai*, 168 F. Supp. 3d at 1353 (citing *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 570 (10th Cir. 1994)).   No single factor is dispositive; courts must apply a totality-of-the-circumstances approach. *Id*.

Here, Plaintiffs presented this Court with evidence that: (1) Henry uniformly classified its drivers as independent contractors; (2) Henry used uniform job titles for drivers with uniform job duties; (3) Henry used a uniform Cartage Agreement with all drivers; (4) Henry subjected drivers to uniform compensation policies; (5) Henry tracked driver activity in real-time in a uniform fashion through a centralized electronic tracking system; (6) Henry issued uniform guidelines on delivery procedures; (7) Henry implemented uniform expectations on driver appearance; and (8) Henry established uniform requirements for vehicles used to perform deliveries. [ECF No. 43].

Based on the foregoing evidence and law, Plaintiffs collectively sought recovery of unpaid overtime compensation from Defendant.

In response, Defendant contends Plaintiffs mischaracterize its business: "Henry Industries is a national warehousing and distribution service that brokers the transportation and delivery of a variety of items, including product, packages, and bulk freight for its customers." [ECF No. 54]. Henry does not itself provide the delivery services, but instead relies on a network of couriers, companies, and other drivers to provide such services. [ECF No. 54].  In particular, Henry presented this Court with evidence that: (1) drivers performed different types of deliveries (*e.g.*, line haul, route and stat); (2) delivery work and requirements varied from customer to customer; (3) drivers maintained separate business entities with separate expenses; (4) drivers could subcontract routes to other drivers; (5) drivers could negotiate different pay rates on their routes; (6) Henry's customers—not Henry—directly enforced delivery-specific requirements; and (7) drivers "owned" varying routes. [ECF No. 54].

Based on these positions, the Parties were diametrically opposed regarding the nature and/or extent of Plaintiff's unpaid overtime wages.  Based on biweekly billing invoices received by Plaintiffs, real-time delivery tracking data maintained by Defendant, industry standards regarding hourly rates for courier delivery services, and other documentary and testimonial evidence in the litigation, Plaintiffs estimated Defendant failed, on average, to account for, and pay, overtime premium compensation (*i.e.*, ~$7.50 per hour) on approximately ten (10) hours per workweek per Plaintiff.  In contrast, based on its unwavering position it properly classified Plaintiffs, Defendant estimated it owed Plaintiffs nothing.  Pursuant to the Settlement Agreement, Plaintiffs will receive, on average, approximately $3,016.86 in compensation; however, the specific amount received by each Plaintiff will be proportional to the amount of their overtime

hours worked, as evidenced by the records and information available. *See* Exhibit G – Settlement Allocations. As a result, Plaintiffs will receive fair and reasonable relief on a heavily disputed claim.

### iii. The Settlement Agreement Resulted After Experienced Wage And Hour Counsel Engaged In Hard-Fought Litigation And Extensive Negotiation Before A Well-Qualified Neutral.

The Parties' respective counsel—experienced wage and hour litigators—extensively briefed and argued legal and factual issues of this litigation for almost four (4) years. *See, e.g.*, *Fry v. Accent Mktg. Servs., LLC*, 2014 WL 294421 at *1 (E.D. Mo. Jan. 27, 2014) (approving settlement reached by parties represented by competent counsel after participating in mediation before an experienced neutral, noting "the parties have developed their cases enough to know the potential recovery and the relative risks of proceeding to trial with their claims").

Prior to mediation, the Parties fully briefed, and the Court granted, conditional certification of the proposed class. Defendant provided Plaintiff and his counsel with route, tracking and billing records and data for all Plaintiffs. The records and data enabled counsel for Plaintiff to reasonably assess the value of the Class Members' claims at mediation. The Parties' exchange of significant information and records in discovery and at mediation ensures the Settlement Agreement constitutes an informed, fair, and reasonable resolution of a bona fide dispute. The contentious case history also demonstrates the absence of collusion or fraud, or any other exceptional circumstance which would weigh against settlement approval.

Plaintiff's lead counsel—Kevin J. Dolley ("Dolley")—has significant experience in collective action wage and hour litigation and serves as the principal of a law firm—Law Offices of Kevin J. Dolley, LLC—which specializes in such disputes. Plaintiff's co-counsel, Cyrus Dashtaki ("Dashtaki") of The Dashtaki Law Firm, also specializes in wage and hour litigation.

Defendant's counsel—Johnny Wang ("Wang") and Molly Keppler ("Keppler")—also have significant experience in collective action wage and hour litigation and work for a national law firm that has a specialty in labor and employment defense—Stinson Leonard Street, LLP.  The Parties' counsel have vigorously prosecuted and/or defended against the respective claims of each party to advance their respective interests at all stages of the litigation.  No circumstances exist to suggest the Settlement Agreement resulted from fraud, collusion, or other circumstances which would frustrate the purpose of the FLSA.

Plaintiffs' counsel support the Settlement Agreement.  Based on their knowledge of the case and the applicable law, as well as their experience with FLSA collective actions, Plaintiff's counsel believe the settlement is fair, reasonable and adequate.  "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *See In re BankAmerica Corp. Sec. Lit.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002); *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995).

Accordingly, this Court should find the Settlement Agreement a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

### C.  The Settlement Agreement Provides For A Reasonable Service Payment To Named Plaintiff Frick.

Service payments are common for named plaintiffs in collective or class wage and hour litigation. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016). Courts may look at several factors in assessing the reasonableness of a service payment, including but not limited to: (1) the actions taken by the plaintiff to protect interests of the class; (2) the degree to which the class benefited from those actions; and (3) reasonable fears of workplace retaliation. *Id*. (approving service award of $7,500 and discussing cases where courts approved service awards of up to $15,000).

Here, the Court should grant Plaintiff Frick the requested service award of $2,000. Plaintiff Frick stepped into the role of named plaintiff once Plaintiff Hose was dismissed from the action. Defendant specifically challenged the issue of having a named plaintiff in this litigation after Hose's dismissal. [ECF Nos. 114-115, 119]. Plaintiff Frick's willingness to serve at this time as the named plaintiff was critical. [*See* ECF No. 122]. Moreover, Plaintiff Frick served as named plaintiff despite substantial concern about the possibility of retaliation by Defendant. [*See* ECF No. 29]. Plaintiff Frick's service, and willingness to serve, in this role—despite the obvious risks to his name and livelihood—provided important benefits to and value for all Plaintiffs.

**D.    A Total Attorneys' Fees Award Of $53,333.33 To Plaintiffs' Counsel Is Reasonable.**

An FLSA settlement agreement must include a reasonable attorneys' fees award. *Barbosa*, 2015 WL 4920292, at *4. Courts commonly apply one of two approaches in assessing the reasonableness of a fee award: a percentage-based approach or the lodestar method. *Id*. at *7. The Tenth Circuit, however, applies a hybrid approach, which combines the percentage-based method with lodestar factors. *Id*. In other words, the Court evaluates the reasonableness of a percentage-based award in light of the following factors: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*.

Here, Counsel for Plaintiffs—that is, the Law Offices of Kevin J. Dolley, LLC and the Dashtaki Law Firm—collectively seek a $53,333.33 award of attorneys' fees, which represents

one-third of the total monetary recovery (*i.e.*, $160,000) in this litigation.  This amount is substantially less than an amount Plaintiffs' counsel could have pursued at trial based on the hours billed and work performed in this litigation.  Counsel for Plaintiffs have expended nearly three thousand (3,000) hours prosecuting claims on behalf of Plaintiffs and have incurred in excess of $700,000.00 in potentially recoverable fees over four (4) years. *See* Exhibit B1 – Dolley Billing Invoice; Exhibit B2 - Dolley Expenses; Exhibit F – Dashtaki Billing Invoice and Expenses. Counsel for Plaintiffs seeks reimbursement of $26,228.29 in costs. Ex. B2; Ex. F.  Notwithstanding this time, expense and labor, Counsel for Plaintiffs achieved a settlement that serves the interests of the Opt-In Plaintiffs by securing significant recovery in the face of substantial risks.  This factor alone—that is, the substantial time and labor required to prosecute the claims and secure recovery on behalf of Plaintiffs—weighs heavily in favor of the reasonableness of the requested fee award.

Moreover, Counsel for Plaintiff are experienced wage and hour litigators, who worked on contingency for almost four years in this fact-intensive litigation about a complex legal issue— that is, whether Defendant's third-party logistics business model ran afoul of the FLSA. Exhibit C – Dolley Declaration; Exhibit E – Dashtaki Declaration.  A determination of an attorneys' fee award must include consideration of the contingent nature of the fee and the challenges involved in obtaining settlement.  "It is an established practice in the private legal market to reward attorneys for taking on risk of non-payment by paying them a premium over the normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F. 3d 1291, 1299 (9th Cir. 1994); *Barbosa*, 2015 WL 4920292, at *10 (acknowledging fact-intensive nature of suit may support fee award).  Here, Counsel for Plaintiff has received no compensation during the course of this litigation, has spent a substantial amount of time to secure settlement on behalf of

Plaintiffs on a complex legal claim with substantial risks, and seeks only a fraction of its potentially recoverable fees. Ex. C; Ex. F.

Finally, attorneys' fee awards of one-third of the settlement (or higher) of the total recovery are common in FLSA wage and hour litigation. *See, e.g.*, *West v. PSS World Medical, Inc.*, 2014 WL 1648741 at *1-2 (E.D. Mo. April 24, 2014) (approving 33% as a reasonable percentage of attorneys' fees in FLSA settlement); *Risch v. Natoli Engineering Co. LLC*, 2012 WL 4357953 at *4 (E.D. Mo. Sept. 24, 2012) (approving attorneys' fees request which constituted more than 50% of the FLSA settlement); *Barnwell, et al. v. Corrections Corp. of America*, No. 08-cv-02151-JWL-DJW (D. Kan. Feb. 12, 2009) (approving attorneys' fees award constituting 33% of FLSA settlement); *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 230-31 (S.D. Iowa 2009) (33% of settlement in attorneys' fees is fair and reasonable); *Wolfert v. United Health Group, et al.*, No. 4:08-cv-01643-TIA (E.D. Mo. May 5, 2009) (33% of settlement awarded as attorneys' fees).[5]

For the foregoing reasons, Plaintiffs respectfully request the Court award Plaintiffs' Counsel $53,333.33 in attorneys' fees and $26,228.29 in expenses.

## III.   Plaintiffs Will Be Provided With Appropriate Notice Regarding Settlement And Opt-Out Procedures.

Plaintiffs will receive accurate and timely notice and have ample opportunity to make informed decisions about whether to participate in the settlement. Ex. A. Courts have discretionary authority to oversee the notice-giving process. *Hoffman-La Roche*, 493 U.S. at 166.  The FLSA generally requires notice to plaintiffs be "'accurate and timely,' giving potential plaintiffs the

---

[5] *See also, e.g.*, *Hughes v. Ozark Guidance Ctr., Inc.*, 2015 WL 554459 at *3-4 (W.D. Ark. Feb. 11, 2015) (approving attorneys' fees request for an amount more than 50% of the FLSA settlement); *Perry v. National City Bank*, No. 3:05-cv-00891-DRH-PMF (S.D. Ill. Mar. 3, 2008) (approving award in the amount of 33% of settlement); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010) ("a counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action").

chance to make informed decisions about whether to participate." *Littlefield v. Dealer Warranty Services, LLC*, 679 F. Supp. 2d 1014, 1018 (E.D. Mo. 2010).

Here, notice to Plaintiffs regarding settlement and opt-out procedures will be fair, accurate, and timely. Ex. A.  Each Plaintiff will receive a Notice and Opt-Out Form ("Notice Packet") via U.S. Mail that sets forth the specific amount owed to him or her pursuant to the Settlement Agreement and the procedures for how to opt out of the settlement. *See Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011) (noting first class U.S. mail is generally recognized to be the best form of notice).  The Notice Packet clearly explains no Plaintiff is required to join the settlement and that failure to join will not result in a waiver of his or her rights.

## CONCLUSION

The law favors compromise and settlement of FLSA collective actions. *See Lynn's*, 679 F.2d at 1354.  The instant Settlement Agreement is fair, adequate, and reasonable.  Accordingly, Plaintiff respectfully requests this Court enter an order: (1) finally certifying the collective action for settlement purposes; (2) approving the Settlement Agreement as fair, appropriate and reasonable; (3) directing distribution of settlement notice to Plaintiffs; (4) directing disbursement of settlement funds to Plaintiffs who do not opt-out of the settlement; (5) approve Plaintiffs' counsel's attorneys' fees and expenses in the respective amounts of $53,333.33 and $26,228.29; (6) approve Plaintiff Frick's service payment in the amount of $2,000.00; and (7) for such other and further relief as this Court deems appropriate.

Respectfully submitted,


By:        /s/ Kevin J. Dolley
           Kevin J. Dolley (D. Kan. No. 78434)
           Jason M. Finkes (admitted *pro hac vice*)
           LAW OFFICES OF KEVIN J. DOLLEY, LLC
           2726 S. Brentwood Blvd.
           St. Louis, MO 63144
           (314) 645-4100 (office)
           (314) 736-6216 (fax)
           kevin@dolleylaw.com
           jason.finkes@dolleylaw.com

           Cyrus Dashtaki (admitted *pro hac vice*)
           THE DASHTAKI LAW FIRM, LLC
           5201 Hampton Ave.
           St. Louis, MO 63109
           (314) 832-9600 (office)
           (314) 353-0181 (fax)
           cyrus@dashtaki.com

           *Attorneys for Plaintiff Richard Frick on behalf of himself and other similarly situated individuals*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on opposing counsel of record via the Court's electronic filing system on July 10, 2017.

           /s/ Kevin J. Dolley

19